UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SUSAN S.,

                    Plaintiff,

v.                                                           3:18-CV-1300
                                                              (TWD)

COMM'R OF SOC. SEC.,

                    Defendant.
_____

APPEARANCES:                                             OF COUNSEL:

LACHMAN & GORTON                            PETER A. GORTON, ESQ.
 Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

U.S. SOCIAL SECURITY ADMIN.           PETER W. JEWETT, ESQ.
 Counsel for Defendant
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278


THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Susan S. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11 and 12.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion

for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born in 1955, making her 59 years old at the amended alleged onset date and 61 years old at the ALJ's decision. Plaintiff reported completing the eleventh grade, and she has no past relevant work. She initially alleged disability due to depression, bipolar disorder, borderline personality disorder, borderline intellectual functioning, anxiety, migraines, emphysema, and chronic obstructive pulmonary disease.

### B.     Procedural History

Plaintiff applied for Supplemental Security Income on January 26, 2015, alleging disability beginning April 1, 2002. (T. 24, 60, 156-61.)[1] She subsequently amended her alleged onset date to her protective filing date of January 26, 2015. (T. 25, 40.) Plaintiff's application was initially denied on May 21, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). (T. 60-76.) She appeared at two administrative hearings before ALJ Elizabeth W. Koennecke on August 1, 2017, and October 4, 2017. (T. 37-59.) On October 18, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 21-36.) On September 25, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

### C.     The ALJ's Decision

---

[1]     The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

The ALJ made the following findings of fact and conclusions of law in her decision. (T. 27-33.) Plaintiff has not engaged in substantial gainful activity since January 26, 2015. (T. 27.) Her mental impairment is a medically determinable impairment. (*Id*.) However, she does not have an impairment or combination of impairments that has significantly limited or is expected to significantly limit the ability to perform basic work-related activities for 12 consecutive months and, therefore, Plaintiff does not have a severe impairment or combination of impairments. (T. 27-32.) Her alleged back impairment, leg impairment, shoulder impairment, migraines, and respiratory impairments are not medically determinable impairments. (T. 32-33.) Accordingly, the ALJ concluded Plaintiff has not been under a disability since the date her application was filed. (T. 33.)

D.  **The Parties' Briefings on Their Cross-Motions[2]**

Plaintiff argues the ALJ erred in finding she does not have a severe impairment because the Step Two determination is not supported by substantial evidence including the two medical opinions of record from non-examining psychological consultant Sefali Bhutwala, Ph.D., and psychological consultative examiner Amanda Slowik, Psy.D. (Dkt. No. 11 at 6-13.) Within this argument, Plaintiff contends the ALJ substituted her lay opinion for that of undisputed medical opinion. (*Id*. at 8-13.)

Defendant argues the Step Two determination is supported by substantial evidence because the ALJ "cited ample evidence to support her conclusions, and she was entitled to rely on the entire record in reaching her conclusions." (Dkt. No. 12 at 5-11.) Defendant maintains the ALJ fully explained her analysis of the medical opinions. (*Id*. at 8.)

---

[2]  **Plaintiff filed a motion to allow a reply brief which was denied because it did not contain any new information or arguments that could not have been raised in the original brief. (Dkt. Nos. 13, 14.)**

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDINGS AT STEP TWO

### A. Applicable Law

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits her physical or mental abilities to do basic work activities. 20 C.F.R. § 416.920(c). Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. *Id*. (citing *Miller v. Comm'r of Soc. Sec.*, 05-CV-1371 (FJS/GJD), 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)); 20 C.F.R. §§ 404.1512, 416.912. Therefore, "the claimant must demonstrate 'that the impairment has caused functional limitations that precluded him from engaging in any substantial gainful activity for one year or more.'" *Rowe v. Colvin*, 15-CV-0652

(TWD), 2016 WL 5477760, at *5 (quoting *Perez v. Astrue*, 907 F. Supp. 2d 266, 272 (N.D.N.Y.)) (internal citations omitted).

### B. Relevant Opinion Evidence

In May 2015, psychiatric consultative examiner Dr. Slowik observed that Plaintiff was cooperative, had adequate social skills though she was somewhat idiosyncratic in her manner of relating, and had normal posture and motor behavior, appropriate eye contact, and adequate expressive and receptive language skills. (T. 229.) Plaintiff's thought process was tangential and disorganized at times and it was difficult to follow her in conversation as she would begin responding to the question posed and then seamlessly start talking about something unrelated. (T. 230.) She had a full range of affect, appropriate speech and thought content, dysthymic mood, clear sensorium, limited insight, and fair judgment. (*Id.*) Dr. Slowik noted Plaintiff had markedly impaired attention and concentration due to her distractibility and limited intellectual functioning and mildly impaired recent and remote memory skills due to distractibility. (*Id.*) Plaintiff reported she was able to dress, bathe, and groom herself, cook and prepare food, clean, and do laundry; she did experience anxiety when going to the grocery store, but did complete this task and chose to go during hours that were less busy; she managed her own money and was able to drive; she did not have access to public transportation and had very little time to spend by herself as she was the caretaker for her mother and sister. (T. 230-31.)

Dr. Slowik diagnosed bipolar I disorder by history, social anxiety disorder, and the need to rule out impaired intellectual functioning. (T. 231.) She opined Plaintiff was mildly limited in the ability to make appropriate decisions; moderately limited in the ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, perform complex tasks independently, relate adequately with

7

others, and appropriately deal with stress; and markedly limited in the ability to maintain attention and concentration. (T. 231.) Dr. Slowik indicated the difficulties were caused by distractibility and affective instability and the results of the evaluation appeared to be consistent with psychiatric problems which might significantly interfere with Plaintiff's ability to function on a daily basis. (T. 231.) The ALJ afforded limited weight to Dr. Slowik's opinion. (T. 31.)

As part of the initial determination in May 2015, non-examining consultant Dr. Bhutwala indicated Plaintiff had a severe affective disorder and anxiety disorder which caused mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. (T. 66-70.) Dr. Bhutwala opined Plaintiff retained the ability to perform simple work on a sustained basis. (T. 70.) The ALJ afforded partial weight to Dr. Bhutwala's opinion. (T. 30-31.)

### C. Analysis of the ALJ's Findings at Step Two

At Step Two, the ALJ found Plaintiff's mental impairment is a medically determinable impairment, but it is not severe. (T. 27-32.) Plaintiff argues the Step Two determination is not supported by substantial evidence. (Dkt. No. 11 at 6-13.) The Court finds this argument unpersuasive for the following reasons.

First, the ALJ's conclusions regarding Plaintiff's alleged mental impairment (variously characterized) and limitations is supported by her analysis. (T. 27-33.) The ALJ found Plaintiff has no limitation in adapting or managing oneself and mild limitations in understanding, remembering or applying information, interacting with others, and concentrating, persisting or maintaining pace. (T. 32.) In so doing, the ALJ noted Plaintiff's treatment records included overwhelmingly benign mental status exams even in the absence of medication, improved

8

psychiatric symptoms, Plaintiff's ability to adequately manage significant life stressors, and her progress toward treatment goals. (T. 32, 217-19, 224, 253, 257, 259, 262, 269, 272, 279-80, 282, 284, 287, 293-94, 296, 300, 302, 308, 311-12, 317, 324, 332, 339, 341, 351, 353, 355, 357, 362.) The ALJ also noted Plaintiff was the primary caretaker for her mother who has dementia and her mentally ill sister; she had a boyfriend; she was able to attend to her personal care needs, prepare food, clean and do laundry; she managed her own money and was able to drive; and she enjoyed reading and watching television. (T. 32, 228-31.) Indeed, at the administrative hearing, Plaintiff indicated she lived with her mother and that it was Plaintiff's job to get the groceries, cook meals, clean, and do the dishes and laundry. (T. 46-47.)

Consultative examiner Dr. Slowik noted that Plaintiff "indicated that she does feel a great deal of pressure as she is the primary caretaker for her mother, who reportedly has dementia" and that Plaintiff "indicated that she has very little time to spend by herself as she is the caretaker for her mother and her sister." (T. 228, 231.) Plaintiff's mental health treatment records consistently note her continued role as a caretaker for her mother who has dementia and mentally ill sister and, at one point, her then-boyfriend. (T. 250, 253, 255, 260, 262, 264-65, 270, 280, 284, 288, 290, 292, 296, 300, 302, 304, 308, 310, 320, 324, 326, 330, 332, 335, 337, 339, 343, 345, 347, 349, 351, 355, 362.) In her decision, the ALJ indicated Plaintiff's complaints of high anxiety and stress were due to her role as a caretaker for both her sister and her mother. (T. 29, 228, 231, 250.) The ALJ noted these activities basically constituted a high stress full time job. (T. 29.) The ALJ therefore found, based on Plaintiff's activities of daily living, it was reasonable to find she did not have a severe physical or mental impairment and did not have even moderate issues with concentration. (T. 30.)

Second, the ALJ relied on the evidence of record to support her analysis, including Plaintiff's treatment records. For example, the ALJ noted Plaintiff's reports to her treating providers that her symptoms were mild, her medication was working really well, and she was functioning pretty well. (T. 29.) As noted by the ALJ and Defendant, Plaintiff initially testified at the administrative hearing that, with her medications, she did not experience her previously described symptoms of nausea, panic attacks, hallucinations, sleeplessness, insomnia, and racing thoughts. (Dkt. No. 12 at 6; T. 28, 42-43.) Upon further questioning by her representative, she then indicated that she experiences symptoms two to three times per month and the duration of symptoms depended on whether she was under stress. (T. 28, 43-44.)

Mental health treatment records support the mildness or stability of Plaintiff's symptoms and indicate Plaintiff first established care at the Family and Children's Society in November 2014; and she was seeking medication management because her previous provider Broome County Mental Health ("BCMH") was closing. (T. 217, 223.) At the time of her intake, Plaintiff was noted as having "been off of her medications and needs to get back on them and needs to see a psychiatrist." (T. 218.) However, she was assessed a Global Assessment of Functioning ("GAF") score of 70 indicative of "[m]ild symptoms, functioning pretty well" and Plaintiff did not think she needed counseling. (T. 219, 225.) Plaintiff also reported that her medication was working really well and noted a "great response with current medications." (T. 223.) Throughout 2015, she reported her medications were working well. (T. 292, 300, 302.) The record indicates Plaintiff was continuing with medication management and individual therapy in July 2017 and, between 2015 and 2017, she was frequently noted as improving. (T. 240-75, 278-305, 308-13, 315-18, 320-22, 324-33, 335-58, 360-63, specifically T. 279, 282, 286-87, 294, 298, 320.)

Further, Plaintiff reported to Dr. Slowik in May 2015 she was seeing a psychiatric provider once every three months for medication management. (T. 228.) Dr. Slowik indicated Plaintiff had a history of panic attacks but had not had any since February. (T. 229.) Dr. Slowik also noted that Plaintiff "reported being diagnosed with bipolar disorder, but was not able to articulate what symptoms she experiences with respect to bipolar disorder. She did not endorse any symptoms of a thought disorder." (*Id.*) Regarding her mode of living, Dr. Slowik noted Plaintiff was

> able to dress, bathe, and groom herself, cook and prepare food, clean and do laundry. She does experience anxiety when going to the grocery store, but does complete this task and chooses to go during hours that are less busy. [She] does manage her own money and is able to drive. She does not have access to public transportation. With respect to her social life, [she] indicated that she has very little time to spend by herself as she is the caretaker for her mother and her sister. She has a distant relationship with her brother. When asked about hobbies and interests, [she] stated that she enjoys reading and watching TV.

(T. 230-31.)

The ALJ concluded that while Plaintiff's mental health records reflected some struggles with coping with the stressful family situation, nothing in the records indicated mental illness on Plaintiff's part and rather simply contained suggestions for coping with her stressful life. (T. 30.) At the time of her November 2014 intake to Family and Children's Society, Plaintiff reported she was "definitely quite busy lately dealing with family matters and she doesn't see how she will find the time to come to therapy but she is not into it." (T. 225.) In June 2015, Plaintiff reported struggling to find time for herself. (T. 247.) In September 2015, Plaintiff reported "some issues with her family and having less time for herself due to feeling overwhelmed with her role as a caretaker." (T. 250.) In October 2015, Plaintiff "was overwhelmed of being a caretaker for both her sister and mother" but reported she had "been

11

doing a good job taking care of herself" and subsequently indicated she "discontinued to be a caretaker for her sister." (T. 253, 310.) Plaintiff reported a subsequent decrease in her stress level in December 2015 following "changes that she made for herself" and "finding ways to increase her focus on herself." (T. 252-53, 312.)

In January 2016, Plaintiff continued to report her depressive symptoms were minimal and well-managed with her medications; she also indicated she felt "stabilized." (T. 315, 317.) In February 2016, Plaintiff was improving in her anxious and depressive symptoms and reported she had not been anxious lately because she was limiting her caretaking role, but indicated that financial issues were the cause of her stress and anxiety. (T. 255-57, 320.) Plaintiff reported her anxiety had decreased further in April 2016 and indicated she did not experience her depressive symptoms but the cold weather affected her mood at times. (T. 258-59.) Plaintiff reported feeling happy in May 2016 and indicated she only became anxious when she felt things were not accomplished or going according to plan. (T. 328.)

In July 2016, Plaintiff reported her anxious symptoms had been "calm" and that she continued to be a caretaker for her mother and for other people, but she was noted as able to find coping skills to decrease her stress levels. (T. 263, 332.) In August and September 2016, she was noted as being "able to stabilize her symptoms with managing her medications and following her treatment plan" although she reported difficulty balancing her role as a caretaker and taking care of herself in September 2016 and that she "discontinued her relationship and social life due to being caretaker of her mother." (T. 264-65, 335, 337-40.) She also reported she felt anxious every now and then but was able to cope with it on her own. (T. 339.) She continued to do well on her current medications and "was able to maintain all the responsibilities

of caring for herself as well as her mother." (*Id.*) In October 2016, she reported no depressive symptoms and/or natural sadness and no worries and/or anxiety. (T. 341.)

In January 2017, Plaintiff reported no depressive symptoms but struggled "with stress and anxiety at times for being a caretaker of her mother and sister. Her medications [did] help with her anxiety and [she had] no issues with it." (T. 347.) In March 2017, Plaintiff reported she was "thinking about volunteering 'to get out of the house.'" (T. 270.) She reported "a 'mild' anxiety and continue[d] to have no depression symptoms" and had been improving in her treatment. (T. 272.) In June 2017, she reported her depression was okay overall despite "May being a hard month." (T. 274, 357.) She was again noted to report a mild anxiety and no depressive symptoms and was continuing to improve in her treatment with "[s]ymptoms only increas[ing] due to situational issues." (T. 275.)

Third, the ALJ offered sufficient and specific reasons for the weight afforded to the medical opinions from Dr. Bhutwala and Dr. Slowik. (T. 30-31.) Specifically, the ALJ noted Dr. Bhutwala's expertise and opportunity to review the record and afforded his assessment partial weight to the extent that his findings were consistent with the record as a whole. (T. 30-31, 66-70.) The ALJ indicated that, given Plaintiff's wide range of activities of daily living, moderate limitations were unsupported and the B criteria identified by Dr. Bhutwala pertained to the old mental health listings and were therefore inapplicable. (T. 31.) The ALJ concluded the portion of Dr. Bhutwala's opinion which was supported by the record as a whole was that Plaintiff had no more than a mild limitation in any area of mental functioning. (T. 31, 66, 68-70.)

The Court's review finds support for the ALJ's analysis of Dr. Bhutwala's opinion, including Dr. Bhutwala's additional explanation which provides insight into his opinion. (T.

13

69.) This explanation indicates that Plaintiff's treatment records noted she reported her symptoms were "causing no impairment to her at home socially or in other settings" and that she was functioning pretty well. (T. 69.) Indeed, Plaintiff's mental health treatment records indicate Plaintiff was consistently noted as improving and stable, with her anxiety symptoms increasing due to stress related to her caretaking roles. (T. 223, 279, 282, 286-87, 292, 294, 300, 302, 320, 324, 335, 337, 339, 341, 343, 345, 347, 349, 351, 353, 355, 357, 362.) Dr. Bhutwala also noted Plaintiff did not think she needed counseling which is supported by Plaintiff's intake note from Family and Children's Society in November 2014. (T. 69, 219, 223, 225.)

Dr. Bhutwala further noted that the consultative opinion from Dr. Slowik was "not adopted and the TMD opinion is viewed as more credible." (T. 70, 227-39.) Dr. Bhutwala did not indicate what treating source assessment or opinion to which he was referring and there is not a treating source medical statement in the record, but it appears he relied on Plaintiff's treatment records as he also indicated "there is a lack of internal consistency between clmt's presentation at CE, and what is indicated through objective evidence in the available TMD MER." (T. 70.) Similarly, the ALJ stated there was "a lack of internal consistency between the claimant's presentation at the consultative exam and her presentation in the treatment records available at the time the State Agency psychological consultant made his assessment" and a "similar inconsistency between the claimant's presentation at the consultative exam and her presentation in the additional treatment records." (T. 29, 70.) The Court's review of Plaintiff's mental health treatment records support the analysis of both Dr. Bhutwala and the ALJ indicating that Dr. Slowik's opinion was not consistent with such records which note Plaintiff's continued stability with medication management and individual therapy. (T. 29, 70, 223, 279,

14

282, 286-87, 292, 294, 300, 302, 320, 324, 335, 337, 339, 341, 343, 345, 347, 349, 351, 353, 355, 357, 362.)

There is also support in the record for the ALJ's analysis of Dr. Slowik's opinion. (T. 31.) The ALJ noted that, although Dr. Slowik had professional expertise and had the opportunity to examine Plaintiff, her opinion was given limited weight

> because her assessment is based upon a one-time examination and her findings are completely inconsistent with the record as a whole. Dr. Slowik's findings are markedly different from those of the claimant's treating providers. The person Dr. Slowik described is extremely limited yet the person the claimant's treating providers describe is highly functional and able to manage significant life stressors appropriately.

(T. 31.) The ALJ also noted Plaintiff's wide range of activities were consistent with her treating providers' assessment rather than Dr. Slowik's assessment. (*Id*.) For example, Plaintiff has continued to act as sole caretaker for her mother as well as an occasional caretaker for her sister and boyfriend. (T. 250, 253, 255, 260, 262, 264-65, 270, 280, 284, 288, 290, 292, 296, 300, 302, 304, 308, 310, 320, 324, 326, 330, 332, 335, 337, 339, 343, 345, 347, 349, 351, 355, 362.) Further, Plaintiff reported at the administrative hearing and to Dr. Slowik that she was able to go grocery shopping, cook and prepare food, clean, and do laundry. (T. 46-47, 230-31.) The record also indicates Plaintiff has considered volunteering to get out of the house and reported in July 2017 that she was able to take one to two hours to herself at least four times each week. (T. 270, 347, 362.) The Court finds that Plaintiff's treatment notes detailing medication management and stability of her conditions are not consistent with the level of limitations opined by Dr. Slowik and the ALJ reasonably concluded such limitations were not supported by the evidence of record. (T. 217-20, 227-33, 240-368.) Indeed, Plaintiff's treating provider noted in June 2017 that her symptoms only increased due to situational issues. (T. 275.)

All in all, medical and nonmedical evidence of record does not indicate Plaintiff experiences significant limitations in her mental abilities to do basic work activities. 20 C.F.R. § 416.920(c). For the reasons above, the Court finds the ALJ properly determined Plaintiff did not have severe impairments and substantial evidence in the record supports that determination. *See Wright v. Comm'r of Soc. Sec.*, 18-CV-1208 (WBC), 2019 WL 5618470, at *4 (W.D.N.Y. Oct. 31, 2019) (finding "the ALJ determined the objective evidence failed to provide support that Plaintiff's medically determinable impairments produced limitations on her ability to perform basic work activities" prior to her date last insured.). The ALJ's analysis of Plaintiff's impairments at Step Two is supported by substantial evidence. Remand is therefore not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint is **DISMISSED**.

Dated: March 13, 2020
       Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge